```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


DARLYNDA MCGHEE,                    :    CIVIL ACTION
                                    :    NO. 12-2919
        Plaintiff,                  :
                                    :
    v.                              :
                                    :
THOMAS JEFFERSON UNIVERSITY         :
HOSPITAL,                           :
                                    :
        Defendant.                  :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                             August 28, 2013

Darlynda McGhee (Plaintiff) brings four claims against Thomas Jefferson University Hospital (Defendant): a Fair Labor Standards Act (FLSA) maximum-hours violation (Count I); FLSA retaliation (Count II); breach of contract under Pennsylvania law (Count III); and retaliation under 42 U.S.C. § 1981 (Count IV).

Defendant moves to dismiss all claims. Plaintiff stipulates to dismissing the FLSA claims. Therefore, the Court need only address the breach-of-contract claim and the § 1981 retaliation claim.

**I.   BACKGROUND**

Plaintiff worked for Defendant from May 2009 to April 9, 2012, performing registration tasks. Third Am. Compl. ¶¶ 6,

8, 41, ECF No. 1. On January 7, 2011, Plaintiff met with her supervisor, Janet James, who offered Plaintiff a promotion to Endoscopy Registrar, which included an increase in pay. Id. ¶ 23. Plaintiff accepted the offer the same day. Id. But as of March 3, 2011, Plaintiff had not received the new position or the pay raise. Id. ¶ 24. That day, she brought the issue to James's attention, and James told her to move to a new workstation in conjunction with the promotion and raise. Id. The next day, Plaintiff emailed James, asking why she had not received the promotion and raise on which the two agreed. Id. ¶ 25. On March 9, 2011, James emailed Plaintiff, confirming that Plaintiff accepted the position on January 7, 2011, acknowledging that the promotion and pay raise should have become effective on that date, and promising that the raise would be retroactive from that date. Id. ¶ 27. On July 7, 2011, Plaintiff sent an email to another supervisor, Michelle Cannion, stating that she still had not received her promotion or the corresponding raise. Id. ¶ 28. And on August 29, 2011, Plaintiff sent yet another email to Cannion, again stating that she had not received the promised pay raise. Id. ¶ 29.

On September 28, 2011, Plaintiff received an email from James in which James criticized her for inappropriate behavior and threatened to fire her if she displayed such

behavior again. Id. ¶ 30. The email concerned a meeting between Plaintiff, James, and Cannion, although Plaintiff claims she did not behave improperly during the meeting. Id. ¶ 31. On October 7, 2011, Cannion requested that Plaintiff meet with her again to discuss Plaintiff's job. Id. ¶ 32. Plaintiff told Cannion that she would not attend the meeting without her attorney present because she feared Cannion would retaliate against her "for complaining about not being allowed to take her lunch break and not being paid for the break." Id. ¶ 33.[1]

On or around December 16, 2011, Plaintiff filed an EEOC complaint against Defendant, alleging that she was being discriminated against, retaliated against, and subjected to a hostile work environment because of her race. Id. ¶ 34. Plaintiff alleges Defendant was informed that she had filed an EEOC complaint against it based on race discrimination sometime after filing. Id. ¶ 35.

After Defendant was made aware of the EEOC complaint, Plaintiff alleges that its retaliation against her "became even

---

[1] From January 2011 until she was terminated in April 2012, Plaintiff claims she was forced to work during lunch and was not paid overtime for doing so. Id. ¶ 21. Plaintiff complained several times about the issue and alleges she was retaliated against in response. Id. ¶¶ 13, 16, 18. She further claims that these policies violated the FLSA. Id. ¶¶ 46-52. As mentioned above, however, she stipulates to dismissing her FLSA claims.

more severe," id. ¶ 36, and lists the following actions taken against her. First, on March 14, 2012, Plaintiff was disciplined for using foul language against two co-workers, which she denies. Id. ¶ 38. Second, on March 30, 2012, Plaintiff was disciplined for allegedly being insubordinate when asked to perform a task; Defendant agrees that Plaintiff performed the task but that she did so in a sarcastic manner, which Plaintiff does not dispute. Id. ¶ 38. Third, on April 5, 2012, James and Cannion told Plaintiff in a meeting that she was suspended indefinitely for insubordination. Id. ¶ 39. James and Cannion based the suspension on another of Plaintiff's requests to call her attorney when asked to attend a meeting with James—she feared that James was going to "unfairly discipline her, belittle her, and discriminate against her again." Id. ¶ 40. Finally, on April 9, 2012, Plaintiff was terminated. Id. ¶ 41. Plaintiff also makes a bare allegation that similarly situated employees who did not file complaints of racial discrimination with the EEOC were not similarly disciplined when they, inter alia, failed to perform tasks, "called off of work at the last minute," and/or failed to arrive to work on time. Id. ¶ 42.

## II.  PROCEDURAL HISTORY

Plaintiff filed two initial, pro se complaints on May 7, 2012, and May 31, 2012. Compls., ECF Nos. 4, 6. The Court dismissed the complaints without prejudice for failure to state a claim upon which relief may be granted and provided leave to amend. Mem. Op., May 31, 2012, ECF No. 2. Plaintiff filed an amended pro se complaint on June 29, 2012, but the Clerk of Court returned it to her as unsigned. Order, July 12, 2012, ECF No. 7. After signing and filing the Amended Complaint (ECF No. 8), the Court dismissed it as failing to state a claim and provided a 30-day period in which to amend for a second time. Mem. Op., July 24, 2012, ECF No. 10. The Court also ordered all filings to be placed under seal because Plaintiff attached several medical documents that contained third-party, private information. Order, July 23, 2012, ECF No. 9. After obtaining counsel, Plaintiff moved for leave to file the Second Amended Complaint, although she did so on January 22, 2013, five months after the deadline to amend. Pl.'s Mot. Leave to File Second Am. Comp., ECF No. 14. On January 24, 2013, the Court granted the Motion. Order, Jan. 24, 2013. The Court also lifted the seal on all filings in response to a motion by Defendant, leaving only Plaintiff's first three complaints impounded. Order, May 7, 2013, ECF No. 20.

5

After receiving proper summons and service of the Second Amended Complaint, Defendant timely filed a motion to dismiss the Second Amended Complaint on June 10, 2013. Plaintiff moved to file a third amended complaint on June 24, 2013, and the Court granted the motion. Order, July 15, 2013, ECF No. 30. Defendant moved to dismiss the Third Amended Complaint, and Plaintiff responded. Finally, the Motion to Dismiss the Third Amended Complaint is now ripe for disposition.

**III. LEGAL STANDARD**

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "accept as true all allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (internal citations omitted). In order to withstand a motion to dismiss, a Complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Id. at 555 (internal citation omitted). Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Twombly, 550 U.S. at 555).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). A claim possesses such plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the court is to limit its inquiry to the facts alleged in the Complaint and its attachments, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV. DISCUSSION**

Defendant argues that Counts III and IV of the Third Amended Complaint must be dismissed with prejudice because they fail to state claims upon which relief can be granted. Specifically, Defendant argues that, regarding Plaintiff's retaliation claim, she fails to allege she engaged in protected activity and fails to allege facts showing a causal connection. Defendant further argues that Plaintiff's breach-of-contract claim fails because she cannot overcome the employee-at-will doctrine.

Plaintiff responds that she has alleged sufficient facts regarding her § 1981 retaliation and breach-of-contract claims. Regarding her § 1981 retaliation claim, she argues that she has raised a reasonable expectation that discovery will reveal evidence to show she engaged in protected activity and established a causal relationship between the activity and her termination. Regarding her breach-of-contract claim, she argues that the employee-at-will doctrine only applies to termination and that her breach-of-contract claim is unrelated to termination. For the reasons that follow, the Court will grant the Motion to Dismiss as to the § 1981 retaliation claim and decline to exercise supplemental jurisdiction over the breach-of-contract claim.

A. Retaliation Under § 1981

Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (2006). This includes contracts for employment. Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009). In 2008, the U.S. Supreme Court held that § 1981 encompasses retaliation claims in the workplace. CBOCS West, Inc. v. Humphries, 553 U.S. 442, 444-55 (2008). The requirements to establish a claim for retaliation under § 1981 are the same as those under Title VII. Brown, 581 F.3d at 181-82. Therefore, a plaintiff can maintain a claim for retaliation under § 1981 by pleading a prima facie case of retaliation: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. Id.

As Defendant concedes that it took an adverse employment action against Plaintiff, the Court will determine whether Plaintiff sufficiently alleges that she engaged in protected activity and that there was a causal connection between her participation in the activity and her termination.

9

1. <u>Protected Activity</u>

Protected activity may consist of "formal charges of discrimination as well as informal protests of discriminatory employment practices, including making complaints to management." <u>Barber v. CSX Distrib. Servs.</u>, 68 F.3d 694, 702 (3d Cir. 1995) (internal quotations omitted). But "if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." <u>Wilkerson v. New Media Tech. Charter Sch. Inc.</u>, 522 F.3d 315, 322 (3d Cir. 2008). For example, the filing of a facially invalid or frivolous EEOC complaint does not constitute protected activity for purposes of making out a retaliation claim. <u>See, e.g.</u>, <u>Slagle v. Cnty. of Clarion</u>, 435 F.3d 262, 267 (3d Cir. 2006).

Although Plaintiff claims that she filed an EEOC complaint that alleges Defendant discriminated against her on the basis of her race, she fails to allege sufficient facts to show that it is protected activity under § 1981 for two reasons. First, she fails to allege whether she is in fact a member of a protected class—nowhere in the Third Amended Complaint does she allege her race or the races of any of her supervisors. <u>See</u> <u>Doe v. Sizewise Rentals, L.L.C.</u>, No. 12-2114, 2013 WL 3746223, at *2 (3d Cir. July 18, 2013) (not precedential). As a result, the

10

Third Amended Complaint does not distinguish between the races of Plaintiff, James, and Cannione—they could all be African American, rendering her EEOC complaint without merit. In other words, clarifying whether or not a plaintiff is a member of a protected class is important to show that a reasonable person could believe that the underlying actions complained about constituted unlawful discrimination. See Wilkerson, 522 F.3d at 322.

Notably, Plaintiff fails to claim that she is part of a protected class despite Defendant pointing out this flaw in the Motion to Dismiss Plaintiff's Second Amended Complaint. See Def.'s Mot. to Dismiss Pl.'s First Am. Compl. 25, ECF No. 23. Thus, Plaintiff and counsel were placed on notice concerning this deficiency in the Second Amended Complaint and yet took no corrective action to make the required changes. Because Plaintiff does not mention a protected class or distinguish anyone's races in the Third Amended Complaint, the Court cannot determine whether her EEOC complaint was filed in good faith; thus, she fails to sufficiently allege that she engaged in a protected activity.

Second, although Plaintiff does allege a number of facts regarding criticisms she received from supervisors and other employees, she does not allege a single fact that could

11

give rise to an inference of discriminatory conduct based on any race (which, as mentioned above, is unidentified as to all persons). She alleges that she filed an EEOC complaint that complains of race discrimination, but nothing in the timeline leading up to the filing of the EEOC complaint could lead a reasonable person to believe she was the victim of any such discrimination. She couches the negative comments and disciplinary actions prior to that point as responses to her complaints concerning the lack of lunch time provided at work. See Third Am. Comp. ¶ 29-33. These allegations go to her FLSA retaliation claim, which she stipulated to dismissing, but, again, do not indicate any discriminatory animus.[2]

Plaintiff argues that she satisfies Wilkerson by merely stating in the Third Amended Complaint that she filed an EEOC complaint that alleges she was the victim of racial discrimination by Defendant. She quotes language from the opinion that she believes supports her argument:

> Frankly, we are skeptical as to the reasonableness of Wilkerson's belief that New Media committed an

---

[2] The flaw in Plaintiff's position is made more evident by her subtle change to paragraph 33 of the Third Amended Complaint in her Response—she alters "fear of being retaliated against for complaining about not being allowed to take her lunch break and not being paid for the break" to "fear of being discriminated against." Pl.'s Resp. 4. Plaintiff seems to acknowledge the deficiency in her Third Amended Complaint by making such a subtle yet important change.

> unlawful practice, but because we have only her complaint before us we are not prepared to hold at this preliminary stage that it is implausible that Wilkerson has a good faith belief that it did.

522 F.3d at 322. But in reversing the district court's decision to dismiss the complaint, the Third Circuit in <u>Wilkerson</u> pointed out that the plaintiff in that case tied the underlying conduct of the defendant—a school activity that the plaintiff felt was idolatrous—to her allegedly protected activity—her vocal objections at the activity that she believed were protected by the First Amendment—in a way that would permit an inference that she objectively believed that the defendant discriminated against her prior to engaging in said activity. <u>Id.</u>

Here, Plaintiff does no such thing. The Third Amended Complaint makes no mention of Plaintiff's belief concerning discriminatory conduct; in fact, she avers that the negative comments and disciplinary actions directed at her were in response to her complaints concerning FLSA regulations. <u>See</u> Third Am. Comp. ¶ 33. Because Plaintiff does not allege that she is a member of a protected class or that any disciplinary action or negative comments were motivated by racial animus, no reasonable person could have believed that the underlying incidents complained about constituted unlawful action.

Accordingly, she fails to sufficiently allege she engaged in a protected activity.

### 2. Causal Connection

Assuming arguendo that Plaintiff sufficiently pleaded facts concerning a protected activity, she nonetheless fails to allege a causal connection because (1) her allegation that Defendant received notice of the EEOC complaint is insufficient; (2) she fails to allege any temporal proximity between Defendant's notice and her termination or that such proximity is unduly suggestive; and (3) she fails to allege facts indicating a pattern of antagonism.

Under the third prong of a prima facie retaliation claim, "a court may examine a broad array of evidence in determining whether a sufficient causal link exists between the protected activity and the materially adverse action." Artz v. Continental Cas. Co., 720 F. Supp. 2d 706, 715 (E.D. Pa. 2010) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 284 (3d Cir. 2000)). Such evidence includes a "close temporal proximity" between engaging in the protected activity and the adverse action and circumstances indicating a "pattern of antagonism" following the protected conduct. Marra v. Phila. Hous. Auth., 497 F.3d 286, 302, 306 (3d Cir. 2007) (citations

omitted). But the timing of alleged retaliatory conduct can, by itself, support a finding of causation only "when the 'temporal proximity' between the protected activity and adverse action is 'unduly suggestive.'" Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012) (quoting LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007) (emphasis added)). Furthermore, "a causal link cannot be established between a protected activity and an adverse action if the individual administering the adverse action is unaware of the protected activity." Omogbehin v. Dimensions Intern., Inc., Civil No. 08-3939 (NLH)(KMW), 2009 WL 2222927, at *6 (D.N.J. July 22, 2009) (citing Woods v. Bentsen, 889 F. Supp. 179, 188–89 (E.D. Pa. 1995)).

First, Plaintiff's claim that "Defendant was informed that the Plaintiff filed a complaint with the EEOC alleging she was being discriminated against because of her race," Third Am. Comp. ¶ 35, is a legal conclusion dressed as fact. She provides no details of the notice or that any supervisor received information regarding the EEOC complaint and only makes a bald assertion that Defendant did in fact receive such notice. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not accept the conclusion as true for purposes of evaluating the adequacy of the Third Amended

15

Complaint. Accordingly, Plaintiff fails to sufficiently allege that Defendant received notice of the EEOC complaint and, by extension, that there exists a causal relationship between her participation in a protected activity and her termination. This deficiency is fatal to her § 1981 retaliation claim.

Second, even if Plaintiff sufficiently pleaded that Defendant received notice of the EEOC complaint, Plaintiff's allegation of temporal proximity is also insufficient to satisfy the causation prong because the Court has no way of knowing whether the time period between Defendant's notice of the EEOC complaint and Plaintiff's termination is "unduly suggestive" of retaliation. LeBoon, 503 F.3d at 232. Plaintiff alleges that four months had elapsed between the filing of the EEOC complaint and her termination, but there is no indication of when Defendant received notice. Defendant could have been notified of the EEOC complaint right after its filing in December, making the relevant period too long a time to be considered unduly suggestive of retaliation. If Defendant received notice right before terminating Plaintiff, then the time period would be unduly suggestive. Because the Third Amended Complaint does not allege a period of time between Defendant's notice and termination, the Court cannot determine whether Plaintiff's

temporal proximity is unduly suggestive of retaliation or whether she must plead facts indicating a pattern of antagonism.

Third, assuming Defendant received notice of the EEOC complaint shortly after its filing, necessitating a showing of a pattern of antagonism between Defendant's notice and termination, Plaintiff fails to plead facts indicating such a pattern. She alleges that Defendant unjustly disciplined her twice before terminating her: once on March 14, 2012, for allegedly using foul language toward two co-workers, and once on March 30, 2012, for being insubordinate when asked to perform a task. Third Am. Comp. ¶¶ 37-38.[3] However, Plaintiff does not dispute Defendant's alleged reason for disciplining her the second time; she admits that she performed the task "in a sarcastic manner," warranting discipline. Id. ¶ 38. Accordingly, the only "pattern" between the protected activity and termination is a single disciplinary action against Plaintiff three months after she filed the EEOC complaint. Plaintiff also alleges the existence of comparators to demonstrate a causal connection, but this allegation is equally insufficient. See Third Am. Comp. ¶ 42.

---

[3] Although Plaintiff was also suspended before she was terminated, see Third Amend. Comp. ¶ 39, her suspension was indefinite and she received notice of termination four days later, id. ¶ 41. Thus, the acts are so interrelated that they should be considered as one continuous action on Defendant's part.

Plaintiff claims that she is permitted to make bare allegations at this stage of the proceeding because she must undertake discovery to obtain more details concerning the causal connection. But she still needs to assert sufficient factual content to "nudg[e] [her] claim . . . across the line from conceivable to plausible." Ashcroft v. Iqbal, 556 U.S. 662, 683 (2009) (citations and internal quotation marks omitted). By failing to set forth sufficient detail concerning notice, an unduly suggestive period of time between notice and termination, a pattern of antagonism, and comparators, Plaintiff fails to allege the existence of a causal link between the protected activity and the adverse action. Therefore, the § 1981 retaliation claim must be dismissed on this ground as well.[4]

---

[4] Although Plaintiff does not request to amend for a fourth time, under Rule 15(a)(2) of the Federal Rules of Civil Procedure, the Court has considered whether leave to amend in this case should be granted in the interest of justice. Fed. R. Civ. P. 15(a)(2). "In the absence of substantial or undue prejudice, denial [of a motion to amend] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." Heyl & Patterson Int'l, Inc. v. F.D. Rich Hous. of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

In this case, the Court has provided Plaintiff three opportunities to amend her complaint—two with counsel—and she was on notice of the deficiencies concerning her § 1981 retaliation claim prior to amending for both the second and third times. Nevertheless, she failed to cure the deficiencies. Even if Plaintiff had requested leave to amend, she would not be entitled to do so for yet a fourth time.

B. Breach-of-Contract Claim

Having dismissed Plaintiff's federal claim, the Court will decline to exercise supplemental jurisdiction over Plaintiff's breach-of-contract claim. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."); Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."). In doing so, the Court does not determine whether Plaintiff sufficiently alleges a claim for breach of contract under Pennsylvania law.

**V. CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss as to Plaintiff's § 1981 retaliation claim and decline to exercise supplemental jurisdiction over her breach-of-contract claim. The Court will, accordingly, dismiss the case.